**Vickie Daigle RAMIREZ d/b/a Vickie Daigle School of Gymnastics and Dance of Bangor**

v.

**Rae ROGERS d/b/a Penobscot Valley Gymnastics School of Ellsworth.**

Supreme Judicial Court of Maine.

Argued Jan. 13, 1988.
Decided April 26, 1988.

---

Mark A. Perry (orally), Archer & Perry, Brewer, for plaintiff.

Barry K. Mills (orally), Hale & Hamlin, Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ.

ROBERTS, Justice.

Rae Rogers, the defendant in this slander action tried before a jury in the Superior Court, Penobscot County, appeals from a judgment in favor of the plaintiff, Vickie Daigle Ramirez. Rogers contends that 1) the trial court erred in placing the burden of proof; 2) the evidence was insufficient to support the verdict; 3) the award of punitive damages was error; and 4) the award of compensatory damages was excessive. Because Rogers' contentions are without merit, we affirm the judgment.

## I. FACTUAL BACKGROUND

In the fall of 1982, Ramirez, who ran a gymnastic school in Bangor, contacted the producers of the television show *That's Incredible* to see if they would be interested in featuring one of her students on an upcoming episode. The eight-year old student could perform a difficult gymnastic maneuver that would normally be attempted only by much older, more experienced gymnasts. The producers of *That's Incredible* agreed to come to Ramirez's

school, film the student at a public meet and feature her performing the maneuver as part of a future episode. Ramirez had arranged to have Kathy Johnson, a member of the United States National Team who had been selected to compete in the Olympics, appear on the show and comment on the student's performance.

Rogers, who owned and ran a competing gymnastic school in Bangor, learned of *That's Incredible's* plans. The evidence established that Rogers called Kathy Johnson and made statements to the effect that Ramirez was under investigation by the Attorney General's office and the subject matter of the investigation had something to do with the children at Ramirez's school. As a result of the phone call, Johnson and her coach determined that in order to avoid any controversy she should not become involved with the filming and she subsequently cancelled her appearance. Rogers also called *That's Incredible* and told persons connected with the show that Ramirez was being investigated by the Attorney General and that the Department of Human Services had received several complaints about her.

Initially, the producers of *That's Incredible* called Ramirez and told her they planned to cancel the filming. Upon hearing this, Ramirez became emotionally distraught. *That's Incredible* ultimately decided to film the show. However, the meet was not open to the public as originally planned. In addition, although another Olympic gymnast commented on the student's performance at the time the episode aired, the gymnast did not come to Bangor and appear at Ramirez's school.

## II. BURDEN OF PROOF

 Rogers argues that the trial justice erred in applying common law defamation principles under which the falsity of a defamatory statement is presumed and it is the defendant's burden to plead and prove truth as an affirmative defense. Instead, she argues, the trial justice should have applied the standard required by the United States Supreme Court in cases where the plaintiff is a public figure and/or a media

defendant is involved; that is, the trial justice should have instructed the jury that the burden was on Ramirez to prove by clear and convincing evidence that the defamatory statements made by Rogers were false and made with actual malice. We reject Rogers' argument and find the trial justice correctly applied common law defamation principles.

Rogers asserts that by seeking nationwide promotion for herself, Ramirez voluntarily placed herself in the public domain and was, therefore, a limited public figure. The Supreme Court has characterized a "public figure" in the following manner:

> For the most part those who attain [the status of a public figure] have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

*Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)); *see also True v. Ladner*, 513 A.2d 257, 262–64 (Me.1986).

Even were we to hold that obtaining television exposure for her gymnastic school made Ramirez a limited public figure within the aforementioned standard, Rogers' contention would fail. Rogers made the defamatory statements concerning Ramirez months prior to *That's Incredible* filming and airing the episode featuring Ramirez and her gifted student. Thus, *at the time the statements were made*, Ramirez was a private figure.

Because this case involves a non-media defendant, defaming a private plaintiff concerning a matter that is not of public concern, we hold that the trial justice properly applied the common law defamation rules when instructing the jury. *See Philadelphia Newspapers v. Hepps*, 475 U.S. 767,

782–83, 106 S.Ct. 1558, 1567, 89 L.Ed.2d 783, 797 (1986); *Dun & Bradstreet v. Greenmoss Builders,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985).

### III. SPECIAL DAMAGES

Rogers next contends that the trial justice erred in refusing to grant a directed verdict because Ramirez failed to prove any special damage. We need not address the sufficiency of the evidence relating to special damage, because we conclude that Rogers' words were actionable per se. In such circumstances Ramirez need not prove she had suffered special damage.[1]

■ We recognize that a good deal of confusion exists in the use of such terms as "libelous or slanderous per se" and "actionable per se." *See Martin v. Outboard Marine Corp.,* 15 Wis.2d 452, 113 N.W.2d 135 (1962). Courts and commentators often use these terms interchangeably, sometimes referring to technical common law pleading requirements that obviate the need to *allege* special damage and at other times referring to the nature of evidence at trial that obviate the need to *prove* special damages. *See Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.,* 367 F.2d 625 (3d Cir.1966). Specifically, the term slander per se refers to words that on their face without further proof or explanation injure the plaintiff in his business or occupation, i.e., are defamatory per se. *Cohen v. Bowdoin,* 288 A.2d 106, 110 (Me.1972). In this case we are concerned with words that are actionable per se, that is, words that when considered in the circumstances surrounding their utterance adversely reflect on the plaintiff's business or occupation. *See Saunders v. VanPelt,* 497 A.2d 1121 (Me.1985). In either case, the plaintiff may recover without proof of special damage.

1. Special damage is that specific amount of money damage that is distinct from the general damage to reputation and feelings presumed to exist without need of proof. *Cohen v. Bowdoin,* 288 A.2d 106, 110 n. 5 (Me.1972).

2. In this case, the Superior Court required Ramirez to amend her complaint as a result of the

■ At trial, Ramirez introduced evidence that Rogers made statements to the effect that Ramirez was under investigation for child abuse concerning children at her school. The evidence warranted a finding, not only that the words adversely affected Ramirez's business, but that this was Rogers' intention. Because the words were actionable per se, Ramirez was not required to prove special damage.[2]

### IV. PUNITIVE DAMAGES

■ Rogers also contends that the evidence was not sufficient to support an award of punitive damages. "[P]unitive damages are available based upon tortious conduct only if the defendant acted with malice." *Tuttle v. Raymond,* 494 A.2d 1353, 1361 (Me.1985). In order to recover damages, the plaintiff must show the defendant's tortious conduct was motivated by ill-will, or that the defendant's tortious conduct "is so outrageous that malice toward a person injured as a result of that conduct can be implied." *Id.* at 1361. The evidence in this case establishes that Rogers intended to disrupt the filming of Ramirez's student and that her actions in fact prevented the filming from taking place as originally planned. We find that the evidence is sufficient to establish that Rogers' actions were motivated by ill-will towards Ramirez and therefore an award of punitive damages was permissible. In addition, we do not disturb the amount of punitive damages awarded by a jury unless the damages assessed were clearly excessive.

### V. COMPENSATORY DAMAGES

■ Rogers' final contention is that the trial justice erred in refusing to grant either a new trial or remittitur on the ground that the compensatory damages awarded to Ramirez were clearly excessive.

trial court's reliance on our opinion in *Cross v. Guy Gannett Pub. Co.,* 151 Me. 491, 121 A.2d 355 (1956), discussing strict compliance with technical pleading requirements. Continued adherence to such technical pleading requirements is inconsistent with the rules of pleading established by the Maine Rules of Civil Procedure.

The justice before whom an action has been tried is in a far better position than an appellate court to know whether in the light of his observations at the trial the damages awarded by the jury were so wholly inconsistent with the proof as to reflect some bias, prejudice or improper influence on the part of the jury or to support the conclusion that the verdict was the result of some mistake of fact or law on their part.

*Mandarelli v. McGovern,* 393 A.2d 533, 535 (Me.1978). The trial justice's determination that neither a new trial nor a remittitur is warranted will not be reversed without a showing that there was a clear and manifest abuse of discretion. *Binette v. Deane,* 391 A.2d 811 (Me.1978). In order to make this determination, we will consider the evidence in a light most favorable to the non-moving party and will defer to the jury on issues of credibility.

Rogers contends that there was no admissible evidence from which the jury could have concluded that Ramirez was entitled to damages in the amount of $50,-000. We disagree. The jury did not have to believe the defendant's witnesses who testified that Ramirez's reputation was not harmed. In addition, the jury was free to conclude that the anguish and humiliation suffered by Ramirez warranted a substantial award.[3] We find no abuse of discretion in the court's denial of Rogers' motion.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** The jury was properly instructed on the issue of compensatory damages in accordance with

*Saunders v. VanPelt,* 497 A.2d 1121, 1126 (Me. 1985).