**Stephen HAWORTH**

v.

**Lee FEIGON, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 5, 1993.

Decided April 6, 1993.

---

Mark S. Kierstead (orally), Waterville, for plaintiff.

Robert E. Sandy, Jr. (orally), Sherman, Sandy & Lee, Waterville, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

Defendants Lee and Leanne Star Feigon appeal from a judgment entered in the Superior Court (Kennebec County, *Chandler, J.*) following a jury verdict in favor of the plaintiff, Stephen Haworth, on his complaint alleging defamation, and against the Feigons on their counterclaim alleging breach of contract. The Feigons contend that the defamation verdict should be set aside and the compensatory and punitive damage awards should be vacated. The Feigons also attack the verdict against them on their counterclaim for breach of contract, claiming error in the admission of certain evidence and that the verdict is not supported by the evidence. We find no error and affirm the judgment.

Based on the evidence, the jury could have found the following facts. In 1984, the Feigons were undertaking to build a 100% solar heated home that they had designed with the help of an architect and an expert on solar technology. The Feigons acted as their own general contractor, and contracted with Haworth, a builder, to provide the labor and carpentry work for a specified price. The contract, dated July 4, 1984, set no completion date, but Haworth estimated that the project would take about six months.

Numerous disagreements marked the construction process. By July of 1985, the house was not yet complete, and the Feigons hired others to finish the carpentry work at an additional cost to them. The house was substantially complete by the fall of 1985. In August of the following year, Linda Lenz, who, with her husband, was seeking to rent property for six months while they were having a home constructed, contacted the Feigons in response to their advertisement offering rental property in the Waterville area. During the course of a telephone conversation with Lenz, Leanne Feigon learned that Haworth was building the Lenz home and said to Lenz that she would need longer than a six-month rental because Haworth had not yet finished the Feigon home. Subsequently, after making plans to view the rental property, Lenz went to the Feigon home and was met there by Lee Feigon, who stated without provocation or introduction, "I hear you hired the drunk." Lee further commented to Lenz that "the guys would all arrive in the morning to work and it got earlier and earlier each day that they started drinking and they would start leaving earlier and earlier, and eventually not show up." During the drive to view the rental property, Leanne stated that she was glad the Lenzes had hired Haworth because the Feigons were going to sue him and they wanted him to have some money.[1]

Haworth brought the within complaint for defamation (Count I), along with a claim for breach of an oral contract to provide Haworth with publicity in connection with the construction project (Count II).[2] The Feigons answered the complaint denying Haworth's claims, and counterclaimed for breach of contract, seeking to recover the cost of completing the house, of repairing a garage door damaged by Haworth, and reimbursement for personal

---

1. The Feigons made the statements to Lenz during a time when they were attempting to collect from Haworth reimbursement for claims that form the basis for the counterclaim later filed by the Feigons against Haworth.

2. The construction of the Feigons' passive solar home received some publicity and was the subject of several articles in newspapers and magazines. The court granted the Feigons' motion for a directed verdict on Count II of Haworth's complaint based on the oral contract. Haworth has not challenged that ruling.

toll calls Haworth made on the Feigons' telephone during the construction.

Following a trial, the jury returned a general verdict in favor of Haworth on the defamation claim, and awarded him compensatory damages of $20,000 and punitive damages of $10,000. The jury also found for Haworth on the Feigons' counterclaim. This appeal by the Feigons followed.

## I.

### HAWORTH'S RECOVERY FOR DEFAMATION

■ Common law defamation consists of:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Lester v. Powers,* 596 A.2d 65, 69 (Me.1991) (adopting *Restatement (Second) of Torts* § 558 (1977)).

### A.

■ The Feigons first contend that the jury should not have been allowed to consider any of the statements because as a matter of law they were in the form of opinion and not false statements of fact. The court, in accordance with *Caron v. Bangor Publishing Co.,* 470 A.2d 782, 784 (Me.1984), determined that the statements were not pure opinion but were capable of being interpreted as having factual content. Although the United States Supreme Court has cast doubt on the constitutional distinction between fact and opinion, at least in the case of a media defendant,

statements of fact and statements of opinion that can reasonably be interpreted as implying factual assertions are properly submitted to the jury.[3] *See Yetman v. English,* 168 Ariz. 71, 811 P.2d 323, 331 (1991). Thus, it was not error for the court to refuse to rule that Lee Feigon's statement, "I hear you hired the drunk," as a matter of law had no factual content and was entitled to absolute protection. Accordingly, it was proper for the court to have the jury determine whether the Feigon's statement was an opinion or false assertion of fact. *Accord True v. Ladner,* 513 A.2d 257, 262 (Me.1986); *Restatement (Second) of Torts* § 566, comment c, illustration 3 (1977).

### B.

■ The Feigons also contend that their statements are not inherently defamatory, that the appellation "drunk" is susceptible of varying interpretations, and that the comments regarding the workers leaving early do not necessarily convey a derogatory meaning. We disagree.

■ Whether the statements are capable of a defamatory meaning is a question for the court, and involves not just the words themselves, but the totality of the circumstances surrounding the communication. *Bakal v. Weare,* 583 A.2d 1028, 1030 (Me. 1990); *see also Fortier v. IBEW, Local 2327,* 605 A.2d 79, 80 (Me.1992).

Whether or not the language set out will bear the interpretation given to it by the plaintiff, whether or not it is capable of conveying the meaning which he ascribes to it, is in such a case a question of law for the court. What meaning the words did convey to one hearing him is in such a case a question for the jury.

*Bradbury v. Segal,* 121 Me. 146, 148, 116 A. 65, 66 (1922); *see also Restatement*

---

**3.** In rejecting this distinction, the United States Supreme Court has substituted a similar inquiry into whether the statement can reasonably be interpreted as stating defamatory facts as opposed to rhetorical, hyperbolic, or figurative speech. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1, 19 (1990). Under this rule, clear hyperbole, rhetoric, or figurativisms, like clear statements of opinion, are as a matter of law not actionable. Statements clearly stating actual facts, as before, are actionable. When the statements are ambiguous and capable of equally reasonable conflicting interpretations, they should be submitted to the jury. *See Yetman v. English,* 168 Ariz. 71, 811 P.2d 323, 331 (1991).

*(Second) of Torts* § 566 comment c. Because the Feigons were specifically commenting on their experience with Haworth in his professional capacity as the builder of their house, and given the derogatory connotation capable of attaching to the statements, it was not error for the court to conclude that the words spoken were capable of defamatory meaning, nor for the jury to determine that Lenz, on hearing the words, attributed a defamatory meaning to them.[4] *Cf. True,* 513 A.2d at 262.

█ In addition, Leanne Feigon contends for the first time on appeal that the judgment against her should be set aside because her statements standing alone are not capable of defamatory import and, therefore, there is no evidence that would support the jury's verdict against her. At trial, both Feigons denied that they made any of the statements denigrating Haworth. There was evidence, however, that Lee and Leanne Feigon together served as the general contractor on the construction project. Lenz testified that the first statement made to her denigrating Haworth, implying that because Haworth was their contractor the Lenzes would have to rent property for a longer period of time, was made by Leanne. The statements made by Lee that Lenz "hired the drunk" and that there was drinking on the job resulting in the work crew leaving the job site earlier and earlier, eventually not showing up at all, were made in the presence of, and were never repudiated or contradicted by Leanne. Indeed, shortly after these statements were made by Lee, Leanne told Lenz that she was glad that the Lenzes had hired Haworth because Haworth would then have money enabling the Feigons to collect on their anticipated judgment against him.

Although the Feigons made a general motion for a directed verdict, Leanne did not request that the court distinguish her statement from that of her husband for purposes of liability, nor did she ask for a separate jury verdict form, or that the jury be instructed to assess her liability for defamation separately. In these circumstances, we cannot say that the jury erred in returning a general verdict against the Feigons. *See Stubbs v. Bartlett,* 478 A.2d 690, 693 (Me.1984) (failure to object to special verdict form that did not make separate liability inquiry as to husband and wife plaintiffs precluded subsequent complaint of failure to award wife separate damages).

### C.

█ The Feigons further contend that because they shared a common interest with the Lenzes in determining the amount of time the Lenzes would need the rental property, their communications to Lenz were protected by the conditional privilege accorded to statements made between parties sharing a common interest, and the court's failure to so instruct the jury was error. Because the court's instruction to the jury gave the Feigons the same protection they would have been entitled to if their statements were privileged, any error in the court's conclusion that there was no conditional privilege was harmless. "A conditional privilege against liability for defamation arises in settings where society has an interest in promoting free, but not absolutely unfettered speech." *Lester,* 596 A.2d at 69 (citations omitted).

█ Even if a conditional privilege exists, however, it may be lost through abuse. The privilege does not protect against liability for false statements made with knowledge of their falsity or in reckless disregard for their truth or falsity.[5] *Id.; Restatement (Second) of Torts* § 600. In this case, the court instructed the jury that in order for Haworth to recover for defamation, the conduct of the Feigons had to be intentional, knowing, or in reckless

---

4. Linda Lenz testified that she interpreted the words in a defamatory manner and that, as a result, she was uncomfortable with Haworth.

5. A conditional privilege may also be lost through abuse if the statement is made "not for the purpose of protecting the interest giving rise to the privilege, but out of other motives entirely, such as spite or ill will." *Lester v. Powers,* 596 A.2d 65, 69 n. 7 (Me.1991) (citations omitted).

disregard for the truth or falsity of the statement made. The jury found the Feigons to have violated that higher fault standard. Thus, the court, even though it did not instruct the jury that the Feigons were protected by a conditional privilege, nevertheless gave the Feigons the benefit of the fault standard applicable to a conditionally privileged statement. That being so, we need not decide whether the statements by the Feigons were conditionally privileged. *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148–49 (Me.1983).

### D.

The Feigons also contend that they are protected by a constitutional privilege because Haworth is a public figure. Fair comment about public figures, even if false, is protected by a privilege that can be overcome only by clear and convincing evidence of the speaker's knowledge and disregard of the comment's falsity. *Lester,* 596 A.2d at 69. Whether a person is a public figure is a question of law. *Restatement (Second) of Torts* § 580A, comment c. The construction of the Feigons' solar home did receive a fair amount of coverage in newspapers and magazines, but Haworth received little publicity from his work on it and certainly not the kind of fame that would allow him easy access to the media to rebut defamatory statements. As a small businessman dependent on reputation, Haworth is especially vulnerable to disparaging comments on his conduct and the conduct of his business. The solar home construction was not a public controversy in the ordinary sense. It was not error for the court to conclude that Haworth was not a public figure.

### E.

The Feigons finally argue that the evidence was insufficient to support the jury's finding that the statements were made with knowledge of their falsity or a reckless disregard for their truth or falsity. A jury verdict will not be disturbed if it is supported by credible evidence that allows the jury to rationally reach its verdict. *True,* 513 A.2d at 265. The statements made to Lenz disparaged Haworth's on-the-job conduct and labelled him a drunk. The statement that Haworth was a drunk was supported by no other evidence and the Feigons presented little to corroborate the statement about Haworth's drinking on the job and leaving early. On the other hand, Haworth presented substantial evidence to show that whatever drinking occurred at the job site, occurred after and not during working hours. Consequently, the jury was justified in finding that the statements were false [6] and were made with knowledge of their falsity or a reckless disregard for their truth.[7]

### II.

### DAMAGES

### A.

The Feigons argue that the $20,000 compensatory damages awarded to Haworth is excessive because the evidence is insufficient to support a finding of slander per se and Haworth failed to prove special damages. The Feigons argue in the alternative that the award is unjustified even on the basis of slander per se.

> [W]ords falsely spoken are slanderous per se if they relate to a profession, occupation or official station in which the plaintiff [i]s employed. Malice is implied as a matter of law ... and the claimant may recover compensatory damages without proving special damages.

*Saunders v. VanPelt,* 497 A.2d 1121, 1124–25 (Me.1985). The statements here were aimed directly at Haworth's fitness for his

---

**6.** The jury was instructed that the plaintiff had the burden of proving the falsity of the statement for it to be defamatory. Under common law defamation principles, however, falsity is presumed and the defendant bears the burden of proving truth as an affirmative defense. *Ramirez v. Rogers,* 540 A.2d 475, 476 (Me.1988).

**7.** In the absence of a constitutional privilege, defamation may be established on a finding of negligence alone. *See Lester v. Powers,* 596 A.2d 65, 69 (Me.1991). The evidence is sufficient to support a finding of negligence on the part of the Feigons.

occupation as a builder, and were slanderous per se. Haworth was not required to prove special damages. *Ramirez v. Rogers*, 540 A.2d 475, 478 (Me.1988).

Moreover, even though not required to, Haworth did present evidence of special damages, in the form of injury to his reputation, humiliation, embarrassment, and a variance between the volume of business he expected and the amount of business he actually did in the years immediately following the Feigon project. We will not disturb a jury's award of damages unless it is the product of bias, prejudice, improper influence, or was reached under a mistake of law or disregard of the facts. *Currier v. Cyr*, 570 A.2d 1205, 1210 (Me. 1990). The $20,000 awarded by the jury is not such a product, and does not result from mistake of law or disregard of the facts. *See Saunders*, 497 A.2d at 1126–27.

### B.

The Feigons additionally contend that the evidence, is insufficient to support any award of punitive damages and that the $10,000 awarded as punitive damages was excessive. Punitive damages are available based on tortious conduct only if the defendant acted with malice. *Ramirez*, 540 A.2d at 478. The plaintiff must show by clear and convincing evidence [8] that the conduct was motivated by actual ill will, or that the conduct was so outrageous that malice is implied. *Id.*

There was substantial evidence of disagreement and animosity between the parties over the duration of the contract and beyond. The jury specifically heard evidence in the form of Leanne's statement to Lenz that the Feigons were planning to sue Haworth. The jury could also infer from Haworth's version of events presented at the trial, that the Feigons were blaming Haworth unjustifiably, thus providing further evidence of ill will. A finding of actual malice will support an award of punitive damages; the conduct need not be outrageous. *See Saunders*, 497 A.2d at 1127.

Even if punitive damages were warranted, the Feigons contend that the award was excessive. An award of punitive damages is within the sound discretion of the factfinder. *Hanover Ins. Co. v. Hayward*, 464 A.2d 156, 158 (Me.1983). The amount awarded by the jury in punitive damages will not be disturbed unless the damages assessed are clearly excessive. *Ramirez*, 540 A.2d at 478. A punitive damages award should reflect the degree of outrage with which the factfinder views the defendant's tortious conduct, as well as other relevant aggravating and mitigating factors. *Firth v. City of Rockland*, 580 A.2d 694, 697 (Me.1990).

There were substantial aggravating factors supporting the punitive damage award. The jury could have concluded that the assault on Haworth's character directly impugning his professional qualifications was completely unwarranted. The jury was also entitled to consider the wealth of the Feigons, who have a net worth of approximately $250,000, in determining the amount of punitive damages. *Hanover Ins. Co.*, 464 A.2d at 158. The jury's award of $10,000 in punitive damages is not clearly excessive.

### III.

### INTEREST

We find to be without merit the Feigons' contention that the court erred in allowing prejudgment interest to be added to the jury's award of punitive damages. 14 M.R.S.A. § 1602 (Supp.1992) provides in pertinent part:

> *In all civil actions ... prejudgment interest shall be assessed....* Prejudgment interest shall accrue from the time of notice of claim setting forth under oath the cause of action ... until the date on which an order of judgment is entered. *If no notice of claim has been given to the defendant, prejudgment in-*

---

8. In order to meet the clear and convincing evidence standard of proof, the factfinder must be convinced to a high probability. *Tuttle v. Raymond*, 494 A.2d 1353, 1363 (Me.1985).

*terest shall accrue from the date on which the complaint is filed.*

(Emphasis added.)

 Although punitive damages are assessed at the time of judgment and are calculated to have their punitive effect as of that time, *see Caron v. Caron*, 577 A.2d 1178, 1180–81 (Me.1990), the plain language of section 1602 does not provide for a different date, other than the date of the filing of the complaint, from which the interest accrues for punitive damages, and we decline to read one into the statute.

## IV.

### FEIGONS' COUNTERCLAIM

#### A.

The Feigons contend that, because of evidentiary errors made by the court, and because there is insufficient evidence to support it, the verdict against them on their counterclaim for a breach of contract should be overturned.

 The first evidentiary ruling challenged by the Feigons is the exclusion of the testimony of Lionel Tardif. Tardif testified concerning his experience with Haworth as the contractor on home renovations that took place prior to the Feigon job. Tardif's testimony that Haworth had used marijuana on the job was objected to by Haworth, and the court instructed the jury to disregard the testimony.[9] The Feigons argue that Tardif's testimony was relevant to the issue of Haworth's credibility and diligence on the job. The court ruled that the evidence was irrelevant because it related to conduct on a different job and involved a different substance from that referred to in the statements that form the basis of this action. We discern no error in that determination.

 The Feigons also contend that the court erroneously permitted witnesses Timothy Roddy, a painter, and Jeffrey Sugden, an electrician, to testify in rebuttal to

the Feigons' counterclaim. We accord considerable deference to the trial court's determination of what constitutes proper rebuttal evidence. *Payson v. Bombardier, Ltd.*, 435 A.2d 411, 413 (Me.1981). The record reveals that the testimony of both Roddy and Sugden was properly admitted to rebut evidence presented by the Feigons to support their counterclaim.

#### B.

 Finally, the Feigons contend that there was insufficient evidence to support the jury's finding that Haworth had not breached the contract by not completing the work on time. In order to successfully challenge the jury's verdict on appeal, the Feigons, because they had the burden of proof, must demonstrate, viewing all the evidence in a light most favorable to Haworth, together with any justifiable inferences therefrom that the jury was *compelled* to conclude in their favor. *Luce Co. v. Hoefler*, 464 A.2d 213, 215 (Me.1983).

In this case, there was no dispute as to the quality of Haworth's work. In addition, there was sufficient evidence of Haworth's performance of much of the contracted-for work to allow the jury to conclude that Haworth had substantially completed the work required by the contract. *See F.A. Gray, Inc. v. Weiss*, 519 A.2d 716, 717 (Me.1986). Moreover, the evidence would allow the jury to conclude that any failure by Haworth to complete the work in a timely manner was the result of the Feigons' failure as the general contractor to properly coordinate the various subcontractors.[10] *See Morin Bldg. Prod. Co., Inc. v. Atlantic Design & Constr. Co., Inc.*, 615 A.2d 239, 241 (Me.1992).

 In contending that the jury ignored the evidence and based its decision on their counterclaim on passion and prejudice, the Feigons rely on the jury's failure to award damages to the Feigons on their essentially uncontroverted separate claim

---

9. The court also denied Haworth's motion for a mistrial.

10. For example, Timothy Roddy, a painter, testified that because other parts of the construction were not completed by other subcontractors, Haworth could not finish his work.

that Haworth damaged their garage door and did not pay for those damages (alleged to be $225), and for unreimbursed telephone calls made by Haworth on the Feigons' telephone at the job site (alleged to be $15). There was credible evidence, however, that, at the request of the Feigons, Haworth performed substantial extra work on the Feigon home, over and above the work contracted for, for which he was never paid, and that the value of that extra work exceeded the $240 claimed to be owed to the Feigons for the damaged door and the telephone bills. The Feigons had the burden to prove the elements of their counterclaim. We cannot say that the jury was *compelled* to find that the Feigons were owed $240. *See Luce Co.*, 464 A.2d at 215.

The entry is:

Judgment affirmed.

All concurring.