MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2015 ME 119
Docket:      Cum-14-489
Submitted
  On Briefs: July 1, 2015
Decided:     September 1, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HJELM, JJ.

DAVID SULLIVAN

v.

ZOË (SULLIVAN) ROCKWOOD

HJELM, J.

[¶1] David Sullivan appeals from a post-judgment order, entered by the District Court (Portland, *Moskowitz, J.*), denying his motions to modify and enforce the parties' divorce judgment. Sullivan contends that the court erred by denying his motions and by declining to allow him to call a rebuttal witness. Because we conclude that the court erred when it denied Sullivan's motion to enforce, we vacate that portion of the judgment, but we affirm in all other respects.

## I. BACKGROUND

[¶2] We view the following facts "in the light most favorable to the court's judgment." *Young v. Young*, 2015 ME 89, ¶ 2, --- A.3d ---. Sullivan and Zoë (Sullivan) Rockwood were divorced in January 2013 after a contested hearing. The court issued a divorce judgment, which granted Rockwood spousal support of

$2,500 per month for twenty years. Additionally, the judgment awarded Sullivan's retirement account to Rockwood, but Rockwood was required to draw from those proceeds to pay the taxes arising from the distribution of the account, the parties' outstanding tax liabilities, and all unpaid medical and dental bills of the parties and their minor children.

[¶3] In January 2014, Sullivan filed a motion to modify and enforce the divorce judgment. In the motion to modify, Sullivan argued that his spousal support obligation should be reduced or terminated because there had been a substantial change in the parties' financial circumstances, including Rockwood's cohabitation with another person. Sullivan's motion to enforce invoked the provision of the judgment that required Rockwood to pay certain debts out of the proceeds from Sullivan's retirement account. He alleged that the account had been disbursed to Rockwood, but that she had not used the proceeds to pay debts as the divorce decree required, and he sought a court order enforcing that requirement.[1]

[¶4] A hearing on Sullivan's motions was held in September 2014. Prior to the hearing, pursuant to a pretrial order, Sullivan submitted a witness list, which

---

[1] The motion also requested that the court "[r]equire [Rockwood] to pay any additional fees, penalties, or interest charged on those liabilities," but the court did not reach that issue, and on appeal Sullivan does not challenge the court's apparent denial of this request.

identified only himself, Rockwood, and the children's guardian ad litem[2] as potential witnesses, but reserved the right to call additional witnesses for the purposes of impeachment or rebuttal. At the hearing, Rockwood testified that she had a boyfriend who lived with her from approximately July 2013 to February 2014 when the relationship ended, but that she never intended for him to live with her permanently and that "[i]t was a temporary thing" to help him when he moved to Maine. Additionally, Rockwood testified that starting in approximately March 2013, her boyfriend's son occasionally stayed with her, and came to live with her and her boyfriend full time in the summer of 2013. The boyfriend sometimes paid Rockwood to take care of his son when he was out of town, and he helped her with expenses like car repairs, "entertainment," and buying presents for the children.

[¶5] Rockwood also helped her boyfriend start a business called Rockwood Builders, and she spent more than $5,000 on him and the business, some of which he paid back. Even after Rockwood and the boyfriend ended their romantic relationship, Rockwood testified, she continued to be involved in the business for several months and received some income from the business. Rockwood testified that she also received between $35 and $75 per week selling baked goods to a local

---

[2]  A guardian ad litem was appointed in August 2014 to investigate whether the children had meaningful preferences about their residency and contact schedule with Sullivan. The court adjudicated those issues in its order, and Sullivan has not appealed that portion of the order.

store, that she was searching for a roommate, and that she was continuing to look for other opportunities to earn money. Rockwood also stated, however, that because she has multiple sclerosis, she cannot regularly engage in any income-generating activity, and she believed that her work in the boyfriend's business contributed to a seizure that she had in November 2013. Rockwood testified that, in total, she had received approximately $2,350 annually beyond her Social Security Disability Insurance, which the court had found in the divorce judgment to be approximately $7,000 per year.

[¶6] Rockwood also testified that she had not paid all of the outstanding debts that she was required to pay from the retirement account. The parties agreed that Rockwood had paid the outstanding taxes, but they disputed which medical debts had been paid. Sullivan attempted to introduce a spreadsheet that Rockwood had produced during discovery, showing the specific medical debts that were still outstanding, but Rockwood would not confirm that she had created the spreadsheet or that it accurately identified which debts were still outstanding. At her attorney's request, the court allowed Rockwood to take time to review the document, but, before she had the opportunity to do so, Sullivan resumed questioning on a different topic and did not subsequently renew or otherwise pursue his offer of the document into evidence. Nevertheless, Rockwood did not dispute that some debts that she was required to pay out of the retirement account remained outstanding.

[¶7] After Sullivan and then Rockwood rested their cases-in-chief, Sullivan called the boyfriend to testify as a rebuttal witness, but Rockwood objected because she was notified only that morning that Sullivan might call him as a witness. The court sustained the objection, noting that the parties had been required to submit witness lists in advance of the hearing and that it was foreseeable that Sullivan would want to call the boyfriend to testify.

[¶8] At the end of the hearing, the court orally denied Sullivan's motion to modify spousal support, finding that the parties' finances had not significantly changed since the divorce judgment and that there was no substantial change in circumstances to warrant any change in support. When Sullivan inquired about the disposition of the motion to enforce, the court also orally denied that motion, saying that there was a "lack of available evidence to satisfy the burden of proof." The same day, the court issued a written order denying both of Sullivan's motions. The order incorporated the court's oral findings and reiterated that "[n]o evidence was presented to establish sufficiently changed circumstances that would require a modification" of the divorce judgment. The written order did not make any findings regarding the motion to enforce.

[¶9] Sullivan moved to reopen the record for the purposes of presenting the boyfriend's testimony and introducing the spreadsheet of outstanding debts. Sullivan also moved for findings of fact and conclusions of law pursuant to

6

M.R. Civ. P. 52(a). After the court denied both motions, Sullivan filed a timely appeal.

## II. DISCUSSION

### A. Rebuttal Witness

[¶10] Sullivan first contends that the court erred when it denied his request to call the boyfriend as a rebuttal witness. "[W]e afford considerable deference to a trial court's determination of what constitutes proper rebuttal evidence." *Rich v. Fuller*, 666 A.2d 71, 74 (Me. 1995). In determining whether the court was required to grant Sullivan's request, we must address two issues. First, because Sullivan did not timely identify the boyfriend as a witness, the court's ruling would not constitute error if "the testimony sought to be rebutted could reasonably have been anticipated prior to trial." *Id.* (quotation marks omitted). Second, even if the testimony could not have been anticipated, we must also determine whether it is true rebuttal testimony because "it is beyond the discretion of a trial judge to exclude genuine rebuttal testimony." *Id.*; *see also* M.R. Civ. P. 43(j) ("A party who has rested cannot thereafter introduce further evidence except in rebuttal unless by leave of court."). Sullivan has not demonstrated that the court erred in either step of the analysis.

[¶11] First, the trial court determined that the proposed testimony by the boyfriend was foreseeable and that "there's no surprise, there's no additional

information that this witness is going to testify about that wasn't known well in advance." That conclusion was not erroneous. In Sullivan's own motion, he alleged that Rockwood had lived with another person. Further, Rockwood's responses to Sullivan's interrogatories clearly stated that the boyfriend had lived with her, that he had paid her to watch his son, and that he paid for some expenses. This demonstrates that Rockwood could be expected to testify about her domestic arrangements and that Sullivan had a foreseeable interest in presenting the boyfriend's testimony as part of his case-in-chief.

[¶12] Rockwood's interrogatory responses also suggested that she did some administrative work for a business, and the record does not suggest that Sullivan sought additional information about the nature or ownership of the business. Thus, Sullivan could have reasonably anticipated that Rockwood also would testify about her involvement in a business, even if he did not investigate the ownership of the business to find out specifically that it was the boyfriend's. Thus, the court did not err when it concluded that Rockwood's testimony was foreseeable and therefore that Sullivan's omission of the boyfriend from his witness list precluded Sullivan from calling him as a rebuttal witness.

[¶13] Second, even if, as Sullivan contends, he could not have foreseen Rockwood's testimony regarding her work for the boyfriend's business, the court was only required to allow the boyfriend to testify if his testimony would constitute

8

genuine rebuttal evidence. Rebuttal evidence is evidence that "repels or counteracts the effect of evidence which has preceded it." *Solomon's Rock Trust v. Davis*, 675 A.2d 506, 510 (Me. 1996) (quotation marks omitted). Here, Sullivan never made an offer of proof describing the substance of the boyfriend's prospective testimony, nor did he explain how the boyfriend's testimony would "repel" or "counteract" any other evidence. He therefore did not establish that the boyfriend's testimony would be "genuine rebuttal testimony," *see Rich*, 666 A.2d at 74, and the court did not err when it denied his request to call the boyfriend as a witness.

B.    Motion to Modify

[¶14]    Sullivan next argues that the court erred in denying his motion to modify spousal support. "We review the court's decision concerning a proposed modification of the spousal support award for an abuse of discretion . . . ." *Charette v. Charette*, 2013 ME 4, ¶ 7, 60 A.3d 1264. A trial court may modify an award of spousal support if it finds "a substantial change in either the payor or payee spouse's financial condition." *Id.* (quotation marks omitted); *see also* 19-A M.R.S. § 951-A(4) (2014) (spousal support "is subject to modification when it appears that justice requires"). "Absent a violation of some positive rule of law, we will overturn the trial court's decision of whether to modify spousal support only if it results in a plain and unmistakable injustice so

apparent that it is instantly visible without argument." *Day v. Day*, 1998 ME 194, ¶ 5, 717 A.2d 914 (quotation marks omitted).

[¶15]  Sullivan contends that Rockwood's income changed and that the court therefore erred when it denied his motion to modify his spousal support obligation. In the original divorce judgment, the court found that Rockwood's earning capacity was $7,000 per year, which was the approximate amount that she had been receiving in Social Security Disability Insurance benefits.  At the post-judgment hearing, Rockwood testified that she had earned approximately $2,350 per year in addition to her SSDI benefits.  Although that testimony established that Rockwood's income had changed for a period of time since the divorce judgment, Rockwood also testified that she was no longer earning money by working for the boyfriend or looking after his son, and that she believed that working too much would exacerbate her worsening health problems.

[¶16]  Thus, even if Rockwood previously had the capacity to generate some income to supplement her Social Security benefits, Sullivan has not established that Rockwood's medical condition will allow her to continue earning extra income.  Moreover, the fact that Rockwood earned slightly more than her previous income does not present a *substantial* change in her financial circumstances from what was anticipated by the original divorce judgment.  *See Voter v. Voter*, 2015 ME 11, ¶ 18, 109 A.3d 626 (stating that the baseline for measuring a

substantial change in circumstances "includes whatever future circumstances were both foreseen and probably provided for in the amount of alimony already set") (quotation marks omitted).

[¶17] Sullivan also contends that Rockwood's cohabitation with the boyfriend constituted a substantial change in circumstances. Pursuant to 19-A M.R.S. § 951-A(12) (2014), "[w]hen it appears that justice requires, an order awarding spousal support is subject to modification to terminate spousal support when it can be shown that the payee and another person have entered into a mutually supportive relationship that is the functional equivalent of marriage that has existed for at least 12 months of a period of 18 consecutive months." *See also Charette*, 2013 ME 4, ¶ 10, 60 A.3d 1264 ("In deciding a motion to modify, a court may consider the recipient's cohabitation with another person if the cohabitation was not anticipated by the divorce decree.").

[¶18] Here, the testimony at the hearing established that Rockwood and her boyfriend lived together for only about six or seven months. Their cohabitation was therefore not long enough to trigger the application of 19-A M.R.S § 951-A(12). Moreover, Rockwood testified that she received only limited support from her boyfriend for expenses such as fixing her car, and that he did not pay for her living expenses or those of her children. Thus, their relatively brief cohabitation does not present a substantial change in circumstances since the

divorce judgment. *See Charette*, 2013 ME 4, ¶¶ 10-11, 60 A.3d 1264 (holding that the court did not abuse its discretion in declining to modify spousal support where there was no evidence that the payee received financial support from her boyfriend). The court therefore did not abuse its discretion when it declined to modify Sullivan's spousal support obligation.

C.     Motion to Enforce

[¶19]  Finally, Sullivan argues that the court erred when it denied his motion to enforce the judgment. We review an order on a post-divorce judgment motion, including a motion to enforce, "for an abuse of discretion or error of law," and we "review factual findings contained therein for clear error." *Lewin v. Skehan*, 2012 ME 31, ¶ 24, 39 A.3d 58; *see also Hawksley v. Gerow*, 2011 ME 3, ¶ 4, 10 A.3d 715 (2011). A party to a divorce judgment who files a motion to enforce is entitled to an order of enforcement when the other party has failed to comply with an unambiguous provision of the judgment. *See Bonner v. Emerson*, 2014 ME 135, ¶ 20, 105 A.3d 1023 (vacating the amendment of a judgment and remanding for the trial court to "reconsider [the movant]'s motion to enforce the plain language" of the judgment); *Stockwell v. Stockwell*, 2006 ME 114, ¶ 11, 908 A.2d 94 (vacating the denial of a motion to enforce where the court erroneously interpreted the divorce judgment, finding that the movant was "entitle[d]" to enforcement of the judgment); *Metivier v. Metivier*, 582 A.2d 971,

973 (Me. 1990) (stating that a husband's failure to comply with a divorce judgment "justified the enforcement order").

[¶20] Here, the judgment unambiguously required Rockwood to pay certain marital debts out of the money that was disbursed to her from Sullivan's retirement account. Rockwood admitted twice at the hearing that, even though she had received funds from the retirement account, she had not paid all of the outstanding medical debts that the judgment required her to pay. Although Sullivan did not prove the amount of medical debt that remained,[3] he was still entitled to an order enforcing the judgment in general terms because it was undisputed that Rockwood did not pay at least some of the debts.

[¶21] Because Sullivan was unable to prove the exact amount of the outstanding debt, and because he did not seek any sanctions for Rockwood's failure to comply,[4] an enforcement order would do little more than direct Rockwood to comply with the terms of the divorce judgment. Nevertheless, such

---

[3] Sullivan argues on appeal that the court erred by not admitting into evidence the spreadsheet showing which debts Rockwood had not paid. In fact, the court never actually ruled on whether to admit or exclude the spreadsheet because Sullivan did not press his offer after Rockwood testified that her attorney created the document and was given additional time to review it. Sullivan has thus waived his argument that the spreadsheet should have been admitted, and the omission of the document from the hearing record cannot be attributed to any judicial error.

[4] Unlike a contempt order, an order of enforcement does not present an opportunity for the court to impose sanctions for failure to comply with the judgment. *See* M.R. Civ. P. 66(b)(3)-(4). Precisely because an enforcement order merely confirms the existence of an outstanding obligation under a judgment and orders compliance, the movant need not show that the non-compliant party has the ability to comply with the judgment in order to receive relief.

an order could be an important starting point for further steps that Sullivan may take to enforce the divorce judgment. Further, the court's denial of the motion to enforce may be misconstrued as a signal that Rockwood need not comply with the divorce judgment. Consequently, because the undisputed evidence establishes that Rockwood failed to comply with unambiguous terms of the judgment, the court was compelled to grant Sullivan's motion to enforce, and the court therefore erred by denying the motion. *See Stockwell*, 2006 ME 114, ¶ 11, 908 A.2d 94.

The entry is:

> Order denying motion to enforce vacated. Judgment affirmed in all other respects. Remanded for entry of order enforcing the divorce judgment.

---

**On the briefs:**

Alicia M. Cushing, Esq., Givertz, Scheffee & Lavoie, P.A., Portland, for appellant David Sullivan

William R. Harrison, Esq., and Dawn Dyer, Esq., Windham, for appellee Zoë (Sullivan) Rockwood

Portland District Court docket number FM-2011-1152
FOR CLERK REFERENCE ONLY