1998 ME 194

**Rachael E. DAY**

v.

**Walter S. DAY.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 22, 1998.
Decided July 31, 1998.

Peter T. Dawson, Augusta, for plaintiff.

William A. Lee, O'Donnell & Lee, L.L.C., Waterville, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

RUDMAN, Justice.

[¶ 1] Walter Sanderson Day ("Mr.Day") appeals from the judgment entered in the Superior Court (Kennebec County, *Crowley,*

J.) in favor of Rachael E. Day ("Ms.Day") on her former husband's post-judgment motion to reduce his alimony obligation. Mr. Day argues that the court erred by refusing to modify his alimony obligation in light of a substantial change in Ms. Day's financial circumstances. In her cross-appeal Ms. Day contends that the court erred by denying her request for reimbursement of her attorney fees and costs. We disagree with both Mr. and Ms. Day and affirm the judgment.

[¶ 2] The parties in this case were divorced on March 30, 1989. The divorce judgment entered by the court (Kennebec County, *Lipez, J.*) adopted and incorporated by reference an agreement reached privately by the parties.[1] The agreement divided the parties' marital property and required Mr. Day to pay Ms. Day $160,000 in cash "in order to effect an equitable division of property between the two parties." The agreement requires Mr. Day to pay Ms. Day alimony for a fixed 10–year period: "$2,500 per month, first such payment to be made on March 1, 1989, and the final such payment to be made on March 1, 1999." The alimony provision further provided:

> Except for said termination, the obligation of Husband to pay alimony to Wife is fixed and final and is not subject to increase, decrease, or any other modification of any other kind for any reason, *including the changed financial circumstances of either party.* (emphasis added).

[¶ 3] At the time of the divorce, Mr. Day owned and operated a travel business and earned approximately $112,000 per year; Ms. Day worked part-time earning less than $10,000 per year. In January, 1997, Ms. Day won the Tri–State lottery. Pursuant to a prior agreement she gave a portion of the jackpot to a friend and thus will receive $4 million over twenty years. Ms. Day, now 59 years old, no longer works, owns her own home, and has a net worth of approximately $2.3 million. Mr. Day is now 64 years old and continues to own and operate his travel business. His annual income is estimated at

---

1. The divorce decree reads, in part:
   The Separation and Divorce Agreement of the parties ... and all terms and provisions thereof, which Agreement is attached hereto, is hereby adopted, incorporated by reference, and made a part of this judgment.

$125,000 and his net worth is approximately $1.56 million.

[¶ 4] Mr. Day's motion to amend the divorce decree was denied (Kennebec County, *Crowley, J.*) after a hearing, and this appeal ensued.

## I.

[¶ 5] Mr. Day argues that, regardless of the existence of an unambiguous anti-modification provision in the separation agreement incorporated into the divorce decree, Ms. Day's lottery income constitutes an extraordinary change in circumstances that compels a reduction in his alimony obligation. Absent a violation of some positive rule of law, we will overturn the trial court's decision of whether to modify spousal support only if it results in a plain and unmistakable injustice, "so apparent that it is instantly visible without argument." *Smith v. Smith,* 419 A.2d 1035, 1038 (Me.1980). In general, the divorce court may modify an award of alimony upon the showing of a substantial change in either the payor or payee spouse's financial condition. *See Haag v. Haag,* 609 A.2d 1164, 1165 (Me.1992).

[¶ 6] Although parties to a divorce may fashion a private settlement agreement addressing property division and spousal support, and the divorce court may incorporate this agreement into the divorce decree, only an incorporated agreement's provision not to increase alimony will survive despite subsequent events. *See Hale v. Hale,* 604 A.2d 38, 41 (Me.1992) In all other circumstances, the divorce court is empowered to "alter or amend a decree for spousal support or specific sum when it appears that justice requires it." 19–A M.R.S.A. § 951(4) (1998). Because the divorce decree reflects the court's consideration of all of the relevant statutory factors, *see* 19–A M.R.S.A. § 951 (1998), once a separation agreement is incorporated into the divorce decree, it is the intent of the divorce court, rather than that of the parties, that is determinative of the parties' obligations, *see Wardwell v. Wardwell,* 458 A.2d 750, 752 (Me.1983). Due regard, however, is given to the parties' intent to insulate a spousal support award from future economic uncertainty when such in-

tent is reflected by an anti-modification provision incorporated into the divorce decree. In the absence of an incorporated anti-modification provision, a payor spouse seeking to reduce a spousal support obligation would bear the burden of establishing a substantial change in the payor spouse's ability to pay or a substantial change in the payee spouse's need for support. *See Haag,* 609 A.2d at 1165. When the divorce decree incorporates the parties' agreement that there be no modification of the award of alimony, however, a payor spouse seeking to reduce his or her obligation must justify the modification on the basis of changed circumstances beyond a mere showing that there has been a substantial change in the parties' respective economic circumstance. *See Hale,* 604 A.2d at 41 ("an anti-modification provision should be considered by the divorce court as an extraordinary circumstance, imposing a greater evidentiary burden on the payor spouse who seeks to modify a decree than would be encountered where no such agreement exists").

[¶ 7] We assume that the existence of an incorporated anti-modification provision is one of the many factors a divorce court considers when it determines an appropriate level of spousal support. The level of spousal support awarded to a payee spouse in a divorce decree with an incorporated anti-modification provision reflects the court's recognition of value in the certainty associated with a fixed support award. More simply stated, a divorce decree with an incorporated anti-modification provision anticipates that the financial circumstances of either of the parties may change substantially.

[¶ 8] In reviewing Mr. Day's motion to amend, the divorce court was not compelled by any equitable considerations to upset the balance that had been struck at the time of the original decree. *See, e.g., Knox v. Remick,* 371 Mass. 433, 358 N.E.2d 432, 435–36 (1976) (modification to spousal support award justified when spouse became public charge subsequent to the execution and incorporation of the separation agreement). Because all that Mr. Day offered the court to justify a reduction in his spousal

support obligation was evidence of a substantial change in Ms. Day's financial circumstances, the divorce court did not exceed the bounds of its discretion in denying his motion to amend the divorce judgment.

## II.

[¶ 9] Ms. Day argues that the trial court should have awarded her counsel fees because the "effort and cost in defending [Mr. Day's motion to amend] was not her choice." A trial court "may" order a party to pay reasonable fees for actions concerning orders to amend an existing decree. 19–A M.R.S.A. § 952(3) (1998); *see also Bryant v. Bryant,* 411 A.2d 391, 395 (Me.1980) (court has broad discretion in its decision to award attorney fees in spousal support actions). Given the merits of Mr. Day's motion, however unsuccessful, and the ability of each party to meet its own financial obligations, the trial court did not trespass beyond the bounds of its discretion in refusing to award Ms. Day her incurred attorney fees. *See Lee v. Lee,* 595 A.2d 408, 412 (Me.1991) ("An award of attorney fees is generally based on the parties' relative capacity to absorb the costs of litigation.") (internal quotations and citations omitted).

The entry is:

Judgment affirmed.

