2006 ME 140

**Ella FITZPATRICK**

v.

**Allan G. FITZPATRICK.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Oct. 20, 2006.

Decided: Nov. 30, 2006.

Daniel R. Nelson, Esq., Stephen D. Nelson, Esq., Severson, Hand & Nelson, P.A., Houlton, for plaintiff.

Richard L. Currier, Esq., Anthony A. Trask, Esq., Currier & Trask, P.A., Presque Isle, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] Ella Fitzpatrick appeals from a divorce judgment entered by the District Court (Houlton, *O'Mara, J.*), contending that the court erred and exceeded the bounds of its discretion by (1) limiting its award of general spousal support to a term of ten years, and (2) making the award not subject to future modification. We agree with Fitzpatrick's second contention and, therefore, modify the judgment so that it is subject to future modification. We affirm the judgment as modified.

## I. FACTUAL BACKGROUND

[¶ 2] Ella and Allan G. Fitzpatrick were married in 1979 and have lived in the Houlton area since. They have three daughters, two of whom are adults. The youngest was nine years old at the time the divorce judgment was entered.

[¶ 3] Allan has been employed as a shift supervisor at Louisiana–Pacific since 1982, and his annual income is approximately $53,000. Ella currently works part-time as a certified nursing assistant (CNA) for a home health services agency twenty hours per week and is self-employed as a hairdresser one morning per week. She coordinates her work schedule so that she can take her daughter to school in the morning and be home when her daughter gets out of school. Because of Ella's part-time schedule during the school year, the parties do not have to pay for childcare.

[¶ 4] The parties entered into a settlement agreement regarding most matters in the divorce, including a provision that their daughter would live with Ella primarily and that the couple would retain shared parental rights. The settlement agreement also divided their marital property and debts. Ella received the marital residence valued at $60,000, a car valued at $12,000, and $50,000 from Allan's 401(k) plan at Louisiana–Pacific. Allan received

vehicles, tools, and equipment valued at $3500 and the $100,000 balance of his 401(k) plan. Once reduced by the loans and debts assigned by the agreement, each party received property with a net value of approximately $102,000. A trial was conducted on the issues of spousal support and attorney fees, with Ella contending that she was entitled to $200 per week for spousal support for at least eighteen years, and Allan contending that he could afford to pay, and Ella only required, spousal support of $100 per week for five years.

[¶ 5] The District Court issued a divorce judgment with written findings ordering Allan to pay Ella general spousal support of $200 per week for four years, then $150 per week for four years, then $100 per week for two years. The judgment provided that spousal support shall terminate upon the death of either party or Ella's remarriage, and that the spousal support amount "may not be increased or decreased in amount or term, or be subject to future modification." The court also required Allan to partially reimburse Ella for her attorney fees.

[¶ 6] The court found that Ella's current earning potential was $12,000 per year, as her working hours were limited by the daughter's childcare needs, and that she "has the ability to become self-supporting, as the parties' child, over time, will require less care. The gradual reduction of spousal support recogni[z]es [that Ella] will increase her hours and work activities in order to be self-supporting." The court found that the levels of spousal support ordered, together with the child support award, would allow Ella to maintain a reasonable standard of living. The court also found that Ella has a medical condition requiring medication that interferes with her ability to work.

[¶ 7] Neither party sought additional findings of fact or conclusions of law. Ella filed this appeal.

## II.  LEGAL ANALYSIS

[¶ 8] We review a trial court's award of spousal support for an abuse of discretion. *Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793, 795. The trial court's findings of fact are reviewed for "clear error." *Macomber v. Macomber*, 2003 ME 1, ¶ 6, 814 A.2d 456, 457. With respect to spousal support awards that are not subject to future modification, we have said that "we must necessarily review much more carefully the extent to which the future economic conditions of the parties may be based upon speculative prediction," and that we will invalidate an award if it is "based on speculative predictions of future economic circumstances." *Warner v. Warner*, 2002 ME 156, ¶ 48, 807 A.2d 607, 624.

A.  Limiting the Spousal Support to a Term of Ten Years

[¶ 9] Ella contends that the court erred in limiting the spousal support to a term of ten years because the term was premised on nothing more than speculation about her ability to become self-supporting within that period.

[¶ 10] The primary purpose of general spousal support is to "provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce." 19–A M.R.S. § 951–A(2)(A) (2005). The spousal support statute does not establish a rebuttable presumption regarding the duration of "general" spousal support in cases involving parties who have been married for more than twenty years as of the date of the filing of the

divorce action, as it does for marriages of twenty years or less in duration. *Id.*[1]

[¶ 11] Based on the evidence in the record, the court did not err in concluding that Ella could become self-supporting in ten years. Unlike *Cole v. Cole,* 561 A.2d 1018, 1021 (Me.1989), in which we invalidated a support award limited to ten years when the spouse had not had the opportunity for the development of marketable employment skills, in the present case, Ella has two marketable skills as both a trained CNA and cosmetologist. At trial, Ella did not contend that she will be unable to respond to the eventual reduction in amount and ultimate termination of spousal support by working more hours as a CNA or cosmetologist, and she conceded that her medical condition, which she has suffered for fifteen years, is controlled with medication. Over time, the parties' nine-year-old daughter will require less care and it is not unreasonably speculative to anticipate that Ella will be able to increase her work hours accordingly.[2] *See Raisen v. Raisen,* 2006 ME 49, ¶¶ 3, 8, 896 A.2d 268, 270 (affirming a spousal support award limited to five years to a parent with the primary residential care of a child with special needs where the record supported the finding that the parent could become self-supporting within that period).

[¶ 12] The ten-year spousal support term was premised on the court's evaluation of Ella's "ability ... to become self-supporting within a reasonable period of time," 19–A M.R.S. § 951–A(5)(O) (2005), and was well within the bounds of its discretion.

## B. Non-modification of Spousal Support

[¶ 13] Ella also asserts that the court abused its discretion by ordering that the spousal support not be subject to future modification. At trial, neither Ella nor Allan advocated that the spousal support should be non-modifiable.

[¶ 14] A court may modify spousal support "when it appears that justice requires unless and to the extent the order awarding or modifying spousal support expressly states that the award, in whole or in part, is not subject to future modification." 19–A M.R.S. § 951–A(4) (2005). Prior to 2000, the spousal support statute provided that a court could, "by full or partial agreement of the parties or otherwise," award spousal support "that may not be

---

1. Title 19–A M.R.S. § 951–A(2)(A) (2005) provides as follows:

     A. General support may be awarded to provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce.
        (1) There is a rebuttable presumption that general support may not be awarded if the parties were married for less than 10 years as of the date of the filing of the action for divorce. There is also a rebuttable presumption that general support may not be awarded for a term exceeding 1/2 the length of the marriage if the parties were married for at least 10 years but not more than 20 years as of the date of the filing of the action for divorce.
        (2) If the court finds that a spousal support award based upon a presumption established by this paragraph would be inequitable or unjust, that finding is sufficient to rebut the applicable presumption.

2. Ella also contends that the court should not have considered the child support payments she will receive when the court determined the amount of spousal support required for her to maintain a reasonable standard of living. A court must consider a variety of factors when determining awards of spousal support, including the effect "on a party's need for spousal support ... [of c]hild support for the support of a minor child or children of the marriage." 19–A M.R.S. § 951–A(5)(P)(2) (2005). Accordingly, the court properly considered the effect of the child support payments on Ella's need for spousal support.

increased regardless of subsequent events or conditions." 19–A M.R.S.A. § 951(6) (1998). Thus, under prior law, non-modification applied only to future increases in the amount of the support. *See Day v. Day*, 1998 ME 194, ¶ 6, 717 A.2d 914, 916 (noting that no agreement other than an agreement prohibiting future increases in spousal support "will survive despite subsequent events"); *Hale v. Hale*, 604 A.2d 38, 41 (Me.1992). In its current form, section 951–A(4) "permits the Court's order to establish that all or a portion of a spousal support award including, but not limited to, the limitations associated with the award, will not be subject to future modification." MAINE FAMILY LAW ADVISORY COMMISSION, COMMENTS ON "AN ACT TO REVISE THE SPOUSAL SUPPORT STATUTE" 4 (Dec. 6, 1999).³

[¶ 15] Non-modifiable spousal support has traditionally been the exception and not the rule because it restricts the ability of the judiciary to achieve justice where the parties' circumstances have substantially changed and the continuation or termination of an existing award is no longer just. *See Hale*, 604 A.2d at 41 (noting that an anti-modification provision "should be considered by the divorce court as an extraordinary circumstance"). That is why we concluded in *Warner* that where the parties have not negotiated and agreed to the non-modification of spousal support, we "must necessarily review much more carefully the extent to which future economic conditions of the parties may be

based upon speculative prediction." 2002 ME 156, ¶ 48, 807 A.2d at 624. This heightened level of appellate review recognizes the risks associated with a non-modification provision that is not the product of the parties' mutual agreement. If the parties have not voluntarily assumed the risks associated with non-modifiable support, a non-modifiable spousal support order has the potential to result in severe hardship to one or both of the parties and work an injustice if the parties' circumstances change in a manner that was not anticipated by the court at the time it established the obligation.

[¶ 16] Absent the parties' agreement, courts should exercise their discretion to order non-modifiable spousal support only where it is demonstrated that there is a heightened need to achieve greater certainty in the parties' post-divorce financial relationship. *Cf. Day*, 1998 ME 194, ¶ 6, 717 A.2d at 916 (noting that anti-modification provisions insulate an award from future economic uncertainty). For purposes of illustration only, a heightened need might arise where a party ordered to pay spousal support has demonstrated a proclivity to intentionally evade interim support obligations or to be unreasonably litigious. *See* MAINE FAMILY LAW ADVISORY COMMISSION, *supra*, at 4 (noting that the availability of modification relief can produce lengthy and expensive litigation). A heightened need might also arise where the court orders reimbursement support "to achieve an eq-

---

**3.** Other jurisdictions that statutorily permit a non-modifiable general spousal support award unattached to an agreement of the parties include Connecticut (CONN. GEN. STAT. ANN. § 46b–86 (West 2004)), New Mexico (N.M.STAT.ANN. § 40–4–7(B)(2)(b) (West 2006)), and Ohio (OHIO REV. CODE ANN. § 3105.18(E)(1) (West 2005)). Ohio has a statutory presumption of non-modifiability, and reviews a trial court's decision to

make an award modifiable for an abuse of discretion. *Ricketts v. Ricketts*, 109 Ohio App.3d 746, 673 N.E.2d 156, 162 (1996). Connecticut will uphold a provision of non-modifiability if it is "clear and unambiguous," even though such provisions are "disfavored." *Amodio v. Amodio*, 56 Conn.App. 459, 743 A.2d 1135, 1143 (2000) (quotation marks omitted). New Mexico's courts have yet to specifically reach this issue.

uitable result in the overall dissolution of the parties' financial relationship," 19-A M.R.S. § 951-A(2)(C) (2005), and that equitable result would be frustrated if one or both of the parties could obtain a modification of the reimbursement support following the divorce.

[¶ 17] In the present case, the court did not make findings associated with its decision to make the spousal support not subject to modification, and neither party requested additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52. Because no motion for specific findings of fact and conclusions of law was made, we assume that the court found all facts necessary to support the non-modification provision to the extent that such facts are supported in the record. *See Raisen*, 2006 ME 49, ¶ 8, 896 A.2d at 270; *see also Dubay v. Dubay*, 2002 ME 100, ¶ 3, 799 A.2d 1221, 1222 (stating that because spousal support awards are reviewed for abuse of discretion, an appellate court must necessarily look at the facts on which the trial court exercised its discretion).

[¶ 18] Before us, Allan asserts that the court acted within the scope of its discretion in ordering non-modifiable support because it achieves economic certainty for the parties in the future. He offers no specific reason why such certainty is needed in this case. The record evidence otherwise provides no basis for us to conclude that there is a heightened need to achieve economic certainty between the parties. Indeed, the opposite is true. The parties do not have substantial assets or sources of income other than their daily work, and it is reasonable to anticipate that in the future both will rely on earned income to support themselves and their minor daughter, and, in Allan's case, to fulfill the general spousal support obligation established by the divorce judgment. There is also no suggestion that non-modifiable support is required because Allan failed to abide by the interim support obligation established in the case, or because either party is overly litigious and will be prone to misuse the right to seek a modification of the support obligation in the future. Because the record does not permit us to assume that the court found facts sufficient to conclude there is a heightened need for economic certainty, the court exceeded the bounds of its discretion when it ordered that the spousal support would not be subject to future modification.

The entry is:

Section VII(1) of the divorce judgment is modified by the deletion of the sentence, "This amount may not be increased or decreased in amount or term, or be subject to future modification." As modified, the divorce judgment is affirmed.