MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 109
Docket:        Cum-13-558
Submitted
 On Briefs:    July 30, 2014
Decided:       August 28, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

RICHARD S. SULLIVAN

v.

JANE DOE[1]

ALEXANDER, J.

[¶1]  Richard S. Sullivan appeals from a judgment awarding parental rights and responsibilities, 19-A M.R.S. § 1653 (2013), entered in the District Court (Bridgton, *Goranites, J.*).  The court awarded sole parental rights and responsibilities of the parties' child to the child's mother, referred to here as Jane Doe, denied Sullivan rights of contact with the child "at this time," and denied Sullivan access to records and information about the child.

[¶2]  Sullivan began sexually abusing Doe when she was a minor.  Despite this, Sullivan argues that the court erroneously found that he poses a significant risk to minors and abused its discretion in denying him rights of contact and access

---

[1]  While we usually identify parties to parental rights matters in opinions, we refer to the defendant as "Jane Doe" because the trial court determined that she had been sexually abused while she was a minor, and there are pending criminal charges arising from the alleged abuse.  As a matter of practice, we do not name victims of sexual abuse in our opinions unless the opinion addresses an appeal in a case in which the victim elected to become a plaintiff in a civil action involving the sexual abuse.

2

to the child's records. Sullivan also argues that the court erroneously found that he owes $38,019 in past child support, claiming that he was not credited for periods when he provided residential care for the child. We affirm the judgment.

## I. CASE HISTORY

[¶3] The trial court found that Richard S. Sullivan sexually exploited and abused Jane Doe starting when Doe was thirteen or fourteen years old and Sullivan was approximately sixty years old. The trial court found that Sullivan's abuse continued throughout the remainder of Doe's minority and into her adulthood, and occurred at least weekly. Once, when she was sixteen, Sullivan arranged an abortion for Doe, without her parents' knowledge. Sullivan agrees that he met Doe when she was thirteen or fourteen, but insists that his sexual relationship with Doe did not begin until she was eighteen.

[¶4] Doe gave birth to the parties' daughter in 2007 when she was twenty years old. The parties dispute the extent to which the child lived or stayed with Sullivan prior to May 2011. Sullivan testified that Doe and the child lived with him intermittently for periods of many months between September 2007 and May 2011 and that he provided for the child financially when she lived with him. Doe agreed that she and the child stayed with Sullivan during some periods for a few months at a time. She also testified that the child never stayed alone with

Sullivan for more than a couple of days at a time, she never resided permanently with Sullivan, and Sullivan did not provide financial support for her.

[¶5]  Doe filed a complaint for an order for protection from abuse (PFA), 19-A M.R.S. § 4007 (2013), against Sullivan in May 2011, and the District Court issued a temporary protection from abuse order.  The parties agreed to the entry of a two-year PFA order on June 15, 2011.  Since then, Sullivan has had no contact with the child.  The record indicates that on June 17, 2013, the PFA was extended for another two years, to 2015, by agreement of the parties.

[¶6]  In December 2011, Sullivan filed a complaint for a determination of paternity, parental rights and responsibilities, and child support obligations as to the child.  After Sullivan's paternity was established in July 2012, the court (*Powers, J.*), after a hearing, entered an interim order denying Sullivan rights of contact, and appointed a guardian ad litem (GAL).

[¶7]  The court held an evidentiary hearing in April 2013 at which both parties, the GAL, and the Department of Health and Human Services appeared. The Department sought a determination of the amount Sullivan owed in child support, payable to the Department for a six-month period, September 2012 through March 2013, when Doe had received public assistance.  Doe requested back child support from Sullivan to the date of the child's birth.  Sullivan objected

4

to Doe's request for back child support, asserting that he supported the child financially during periods when the child lived with him.

[¶8] At the conclusion of the hearing, the court ordered the matter stayed until the child could be evaluated to assist in determination of whether the child had been abused. The court also entered two child support orders, apparently by agreement of the parties, ordering Sullivan to pay $132 weekly, retroactive to September 7, 2012. Sullivan was subsequently indicted on five counts of sexual abuse of a minor in York County based on his alleged abuse of Doe. We take judicial notice that these charges remain pending as of the date of this decision. *See King v. King*, 2013 ME 56, ¶ 4 n.1, 66 A.3d 593.

[¶9] After Spurwink evaluated the child, the court held a second evidentiary hearing in November 2013. The Spurwink child-sexual-abuse evaluator reported that "there is no compelling evidence that indicates that [the child] has been sexually abused." On November 19, 2013, the court entered judgment on Sullivan's complaint for determination of paternity, parental rights and responsibilities, and child support. In that judgment, the court made the three rulings subject to this appeal.

[¶10] First, the court awarded sole parental rights and responsibilities to Doe with no rights of contact to Sullivan "at this time." In support of this order, the court found by a preponderance of the evidence, *see Hatch v. Anderson*,

2010 ME 94, ¶ 12, 4 A.3d 904, that Sullivan had sexually abused Doe when she was a minor and that the sexual abuse fell on "the extreme end of the abuse spectrum." The court further found that Sullivan's behavior was predatory and untreated, that he is in denial about that behavior, and that he therefore poses a significant risk to minors, including his now seven-year-old daughter.

[¶11]  Second, for the same reasons and pursuant to 19-A M.R.S. § 1653(2)(D)(4) (2013), the court ordered that Sullivan may not have access to records and information about the child.

[¶12]  Finally, the court found that Sullivan owes Doe $38,019 in child support arrearages for the child support obligation that accrued from June 22, 2007, to November 15, 2013. The court based its findings on Doe's calculation of the past due child support and the Department's child support worksheet, which the court expressly found reliable.

[¶13]  Neither party filed motions for additional findings of fact or conclusions of law. *See* M.R. Civ. P. 52(b). Sullivan filed this timely appeal.

## II. LEGAL ANALYSIS

### A. Finding of Significant Risk to Minors

[¶14]  Despite Doe's testimony detailing his abuse of her beginning at age thirteen or fourteen, Sullivan asserts that there is no competent evidence in the record to support the court's finding that he poses a significant risk to minors.

6

[¶15] "When . . . a party to an appeal asserts that the trial court's findings are not supported by evidence in the record, we review the record, and reasonable inferences that may be drawn from the record, in the light most favorable to the trial court's judgment to determine if the findings are supportable by competent evidence." *Sloan v. Christianson*, 2012 ME 72, ¶ 2, 43 A.3d 978.

[¶16] Doe's testimony constitutes competent evidence that Sullivan gained Doe's trust when she was a minor, that he then sexually abused her for years, starting when she was thirteen or fourteen, and that he took steps to conceal his abuse. While Sullivan denied any sexual impropriety with Doe while she was a minor, it was the court's exclusive province as the fact-finder to assign the weight to give that evidence and to determine Doe's credibility. *See Charette v. Charette*, 2013 ME 4, ¶ 9, 60 A.3d 1264.

[¶17] Although Sullivan presented witnesses who testified that he has cared for the child and for other children and that the witnesses observed no concerning interactions between Sullivan and those minors, the court apparently did not believe or assign significant weight to that testimony, as was its prerogative. *See id.* The evidence further supports the court's findings that Sullivan denies that he abused Doe as a minor and that he has therefore never received treatment for his "predatory behavior."

[¶18]  Given the evidence, and reasonable inferences drawn therefrom, of Sullivan's history of sexually abusing a young girl, and of his subsequent failure to acknowledge or seek treatment for his victimization of a minor, the court's determination that he poses a significant risk to minors is fully supported by the record.

B.     Denial of Contact with the Child

[¶19]  In addressing rights of parent-child contact, the best interest of the child is the paramount consideration.  *Grant v. Hamm*, 2012 ME 79, ¶ 6, 48 A.3d 789; *see also* 19-A M.R.S. §§ 1653(1)(C), (2)(D)(1), (3) (2013).  We review factual findings for clear error and the ultimate conclusion concerning the child's best interest and rights of contact for an abuse of discretion.  *See Grant*, 2012 ME 79, ¶¶ 6, 15, 48 A.3d 789.  Because Sullivan did not request additional findings of fact pursuant to M.R. Civ. P. 52, we assume that the trial court made all of the necessary subsidiary findings that can be supported by competent record evidence to support its decision to order no rights of contact "at this time" and no right of access to the child's records.  *See Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 10, 982 A.2d 339; *Fitzpatrick v. Fitzpatrick*, 2006 ME 140, ¶ 17, 910 A.2d 396.

[¶20] Here, the court very evidently applied the best-interest-of-the-child standard in determining rights of contact.[2] The court's finding that Sullivan poses a significant risk to minors is supported by the evidence, and, contrary to Sullivan's characterization of the GAL's opinion, the GAL equivocated on whether Sullivan should be allowed even supervised contact, advising that such a decision would depend on facts yet to be determined. Additionally, though the court did not reference the fact in its decision, criminal charges arising out of Sullivan's relationship with Doe were, and are, pending against Sullivan. *See, e.g.*, *Douglas v. Douglas*, 2012 ME 67, ¶¶ 3-4, 17, 43 A.3d 965.

[¶21] Although the statute expresses a preference for parent-child contact, this preference does not apply when the court "determines that the best interest of [the] child would not be served." 19-A M.R.S. § 1653(1)(C). On this record, the court acted within the bounds of its discretion in denying Sullivan rights of contact "at this time," which invites modification of the judgment in the event of a substantial change in circumstances at a later date. *See Grant*, 2012 ME 79, ¶ 6, 48 A.3d 789 (stating that the trial court's judgment is entitled to "very substantial

---

[2] By statute, the court is required to consider a number of factors to determine the best interest of the child. 19-A M.R.S. § 1653(3) (2013). We infer from the judgment that the court in this case made an ultimate finding concerning the child's best interest and that it considered the factors in section 1653(3), particularly in section 1653(3)(A), (K), (M), (N), and (S), in doing so. Although the court did not make explicit findings on the best-interest factors, "a court may enter a judgment without making explicit findings addressing best interest or any other issue, unless findings are requested." *Grant v. Hamm*, 2012 ME 79, ¶ 13, 48 A.3d 789; *see also Nadeau v. Nadeau*, 2008 ME 147, ¶ 35, 957 A.2d 108. Sullivan did not request additional findings. *See Grant*, 2012 ME 79, ¶¶ 13-14, 48 A.3d 789.

deference" given its ability to appraise witness testimony); *Douglas*, 2012 ME 67, ¶¶ 14, 17, 43 A.3d 965.

C.     Denial of Access to the Child's Records

[¶22]   The law requires that a parent must have access to records and information relating to his child "unless that access is found not to be in the best interest of the child," in which case the court must state its reasons for denying access.   19-A M.R.S. § 1653(2)(D)(4).   As with any decision that is analyzed according to the best interest of the child, we review the court's ultimate decision to allow or deny access to the child's records for an abuse of discretion.  *See In re Alivia B.*, 2010 ME 112, ¶ 12, 8 A.3d 625.

[¶23]   The court complied with section 1653(2)(D)(4) by stating its reasons for denying Sullivan access to the child's records and information, which were the same reasons it awarded Doe sole parental rights and responsibilities and no rights of contact "at this time" to Sullivan.   The court did not abuse its discretion in denying access to the child's records.

D.     Amount of Child Support Arrearage

[¶24]   Sullivan does not dispute that he owes back child support or the amount of income attributed to each party used to calculate the support amounts. He argues that the court clearly erred in finding that he owes $38,019 in back child support primarily because, according to Sullivan's trial testimony, the child lived

with him during periods in 2007 through 2011 for which, he argues, he should have received credit deducted from the child support arrearage.[3]

[¶25] "Past support is calculated by applying the current support guidelines to the period for which past support is owed." 19-A M.R.S. § 2006(2) (2013); *see also* 19-A M.R.S. §§ 1553, 2002 (2013).[4] There is a rebuttable presumption that the child support obligation derived from the child support guidelines is the amount to be ordered, absent special circumstances or a deviation from the guidelines, and the court must order the party not providing primary residential care to pay that party's share of the total basic support to the party providing primary residential care. 19-A M.R.S. §§ 2005, 2006(4), (5), 2007 (2013).

[¶26] We review the trial court's award of child support for an abuse of discretion and the underlying factual findings for clear error. *Foley v. Ziegler*, 2007 ME 127, ¶ 8, 931 A.2d 498. We do not disturb the court's findings if there is any competent record evidence to support them. *Id.*

[¶27] The court made no subsidiary findings to support its determination that Sullivan owes Doe $38,019 in child support arrearages. However, as

---

[3] Contrary to Sullivan's additional contention that the court wholly adopted the Department's and Doe's calculations of his child support debt, it is evident that the court reviewed the evidence and applied its independent judgment upon expressly finding the calculations to be reliable. *See Bonville v. Bonville*, 2006 ME 3, ¶ 9, 890 A.2d 263.

[4] Pursuant to the Uniform Act on Paternity, 19-A M.R.S. §§ 1551-1570 (2013), the child support provisions in 19-A M.R.S. §§ 2001-2012 (2013) apply in this case to an award of past support. 19-A M.R.S. § 1553.

previously noted, Sullivan requested no further findings of fact, and we therefore assume that the trial court made all of the necessary subsidiary findings, if those findings are supported by competent record evidence, to support its determination. *See Efstathiou*, 2009 ME 107, ¶ 10, 982 A.2d 339; *Fitzpatrick*, 2006 ME 140, ¶ 17, 910 A.2d 396. Competent record evidence supports the court's finding of the arrearage amount.

[¶28] Although at times Doe and the child lived with Sullivan, Doe testified that they did so sporadically for a few months at a time and that Sullivan did not financially support the child during those periods. The trial court acted within its province to credit that testimony. *See Charette*, 2013 ME 4, ¶ 9, 60 A.3d 1264; *Wong v. Hawk*, 2012 ME 125, ¶ 16, 55 A.3d 425. Therefore, the record supports the court's implicit determinations that Sullivan was not the child's primary care provider during the identified time periods and that the parties did not provide substantially equal care during those times.[5] *See* 19-A M.R.S. § 2006(4), (5)(D), (D-1); *Jabar v. Jabar*, 2006 ME 74, ¶ 17, 899 A.2d 796.

[¶29] Additionally, if Sullivan sought a deviation from the child support guidelines to receive credit for times when, he claims, the child lived with him, he

---

[5] "'Primary residential care provider' means the party who provides residential care for a child for more than 50% of the time on an annual basis if the parents do not provide substantially equal care as defined in subsection 8-A." 19-A M.R.S. § 2001(8) (2013). "'Substantially equal care' means that both parents participate substantially equally in the child's total care, which may include, but is not limited to, the child's residential, educational, recreational, child care and medical, dental and mental health care needs." 19-A M.R.S. § 2001(8-A) (2013).

was required to provide to the court written proposed findings showing that the presumptive child support amount would be inequitable or unjust. 19-A M.R.S. §§ 2005, 2007. There is no indication that he did so. The court did not abuse its discretion in not deviating from child support guidelines. *See Potila v. Nadeau*, 2014 ME 5, ¶ 4, 85 A.3d 1290; *Wong*, 2012 ME 125, ¶¶ 16-18, 55 A.3d 425; *Johnson v. Smith*, 1999 ME 168, ¶ 14, 740 A.2d 579; *Bojarski v. Bojarski*, 2012 ME 56, ¶ 29, 41 A.3d 544.

[¶30] Finally, Sullivan asserts that the amount of arrearages is erroneous because he had previously paid a portion of the arrearages; however, as Sullivan acknowledges, the record does not include evidence to that effect, and we do not further address the merits of the issue because there is no indication that Sullivan brought the alleged error to the trial court's attention. *See Akers v. Akers*, 2012 ME 75, ¶ 9, 44 A.3d 311 (declining to address on appeal the issue of a possible error in the court's calculation of credit towards child support because the party did not bring the error to the court's attention); *see also* M.R. Civ. P. 52, 59(e), 60.

[¶31] In short, the court did not err or abuse its discretion in determining child support arrearages.

The entry is:

> Judgment affirmed.

_____

**On the brief:**

Dawn D. Dyer, Esq., Law Office of Dawn D. Dyer, Windham, for appellant Richard S. Sullivan

Jane Doe did not file a brief

Bridgton District Court docket number FM-2011-242
FOR CLERK REFERENCE ONLY