MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 11
Docket:        Pis-14-72
Submitted
 On Briefs: October 27, 2014
Decided:       January 29, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, and HJELM, JJ.[*]

PATRICIA MAE VOTER

v.

DEXTER R. VOTER

HJELM, J.

[¶1]  When Patricia Mae Voter and Dexter R. Voter divorced in 2006 after twenty-seven years of marriage, the divorce judgment required Dexter to pay Patricia general spousal support of $1,300 per month until he retired, when the amount of support would become "1/2 of his retirement earnings."  After Dexter retired in 2013, he filed a post-judgment motion to modify the amount of his spousal support obligation.  The District Court (Dover-Foxcroft, *Stitham, J.*) issued an order clarifying the meaning of "retirement earnings," and then, after a testimonial hearing, denied the motion to modify.  Dexter appeals those orders, and we affirm.

---

[*]  Silver, J., participated in the initial conference but retired before this opinion was adopted.

## I. BACKGROUND

[¶2] Patricia and Dexter's divorce in October 2006 was uncontested. The divorce judgment made reference to the parties' written settlement agreement, which provided for spousal support and the disposition of real and personal property. The judgment required Dexter to pay spousal support as follows:

> The Defendant [Dexter] shall pay the Plaintiff [Patricia] as general spousal support $1,300.00 a month starting 10/15/06 and the 15th of each month thereafter until the first of the following to occur:
> 1. the Plaintiff re-marries, or;
> 2. the Defendant retires.
>
> In the event that on the date that the Defendant retires the Plaintiff has not re-married, then the Defendant shall on a monthly basis, pay the Plaintiff as general spousal support 1/2 of his retirement earnings until the Plaintiff re-marries.

Patricia has not remarried and therefore remains entitled to receive support pursuant to the judgment.

[¶3] Dexter was employed by the United States Postal Service (USPS) until he became disabled and stopped working in April 2013. He then began to receive Social Security Disability (SSD) benefits and retirement benefits from the USPS. Additionally, he receives retirement benefits from the United States Air Force (USAF) and rental income from a house he owns, which is occupied by the son of his present wife. He also expects to receive Social Security benefits when he reaches the age of sixty-five.

[¶4]  In May 2013, Dexter filed a motion to modify the amount of his spousal support obligation pursuant to 19-A M.R.S. § 951(4) (2014), alleging a change of circumstances because he is no longer employed.  At a case management conference on the motion, both parties agreed that the court would issue an order clarifying the term "retirement earnings" as it appears in the judgment.  In October 2013, a non-testimonial hearing was held, where Dexter contended that only money earned during retirement, such as the rental income, should be considered "retirement earnings," while Patricia argued that spousal support should be based on all categories of income that Dexter received during retirement, including his SSD benefits and his USPS and USAF retirement benefits.  The court issued a written order clarifying the judgment by defining "retired" and "retirement earnings," as used in the judgment, as follows:

> The Defendant shall be considered to be *retired* when he ceases to be regularly employed for whatever reason.
>
> *Retirement earnings* consist of all monies paid to or received by the Defendant.  This would include but not be limited to: his Social Security, Social Security disability, postal retirement, military retirement, rental income, and monies received for any of his labor.

[¶5]  In January 2014, a testimonial hearing was held on Dexter's motion to modify.  There, Dexter argued that his support obligation should either be

terminated altogether or reduced to a monthly payment of $700.[1]  Following the hearing, the court issued a written decision denying Dexter's motion.  The court found that Patricia's annual income, including the spousal support that Dexter was required to pay, was approximately $29,000 and that without spousal support, her only source of income was Social Security, which amounted to less than $9,000 annually.  At the time of the hearing, she was seventy-five years old and lived in subsidized housing for the elderly.  Dexter, who was sixty-two years old at the time of the hearing, received more than $51,000 annually from retirement and disability benefits and rental income.  He had remarried, and his new wife received annual retirement benefits of $20,000.  The court concluded that the amount of spousal support required by the judgment was both necessary to maintain a "reasonable standard of living" for Patricia and within Dexter's financial capability.

---

[1]  The record does not reveal why Dexter argued that support should be reduced to this particular amount as an alternative to termination of support.

[¶6] Dexter filed a timely appeal from the court's order.[2] He contends that the court erred by construing "retirement earnings" too broadly and by denying his motion to modify his support obligation.[3]

## II. DISCUSSION

### A. Clarification of the Judgment

[¶7] Dexter first argues that the court erred by clarifying the spousal support provisions of the judgment and, as part of that clarification, by construing "retirement earnings" to include income in addition to his USPS and USAF retirement benefits.[4]

---

[2] Patricia argues that Dexter's appeal was untimely because it was not filed within 21 days of the date the court issued its clarification order. *See* M.R. App. P. 2(b)(3). The parties, however, treated the clarification issue as a component of the motion to modify. Consequently, an appeal from the clarification order would have been interlocutory because the motion to modify had not been fully adjudicated. *See* M.R. Civ. P. 54(b)(1).

[3] After the court denied Dexter's motion to modify, Patricia filed a motion to enforce the support obligation. Following a hearing held in May 2014, the court granted the motion, finding that Dexter was in arrears "simply [because of] his failing to budget realistically" and "choices that needlessly impair his ability to keep current" in the support payments owed to Patricia. The court entered judgment against Dexter for the amount of the arrearage and attorney fees, and ordered that income be withheld from his SSD benefits and his USAF and USPS retirement payments. Dexter has not appealed that order.

[4] This appears to be a different argument than the one Dexter made to the trial court. There, Dexter argued that only money actually earned during retirement (i.e. his rental income) should be considered "retirement earnings," but then said "at the very height" the definition might also include his USPS retirement benefits. On appeal, he argues that the trial court erroneously expanded the definition of "retirement earnings" to include Social Security benefits, rental income, and labor, rather than just income that he had "coming to him from his various retirement plans and pensions." Therefore, because he has changed his position regarding whether his rental income, income from other labor, and USPS and USAF benefits should be included in the definition of retirement earnings, his only consistent argument is that Social Security benefits should be excluded from that term. Because we affirm the court's clarification order on its merits, however, we need not reach the question of whether Dexter preserved his argument that income and benefits other than Social Security should be excluded from the definition of "retirement earnings."

[¶8] In order to determine whether the court's clarification of the divorce judgment was erroneous, we use a two-part test. First, we determine "whether the prior judgment was ambiguous as a matter of law." *Thompson v. Rothman*, 2002 ME 39, ¶ 6, 791 A.2d 921 (quotation marks omitted). This is a de novo determination that centers on whether the language at issue is "reasonably susceptible to different interpretations." *Burnell v. Burnell*, 2012 ME 24, ¶ 6, 40 A.3d 390 (quotation marks omitted). If the judgment is ambiguous, then "the court has the inherent and continuing authority" to clarify the judgment, *MacDonald v. MacDonald*, 582 A.2d 976, 977 (Me. 1990), and we consider, using an abuse of discretion standard, whether the clarification "is consistent with its language read as a whole and is objectively supported by the record." *Thompson*, 2002 ME 39, ¶¶ 6-7, 791 A.2d 921. Where, as here, the judge who clarified the judgment is also the judge who initially issued the judgment, we give particular deference to the clarification because "it is the intention of the court that issued the judgment originally that is controlling." *Id.* ¶ 8.

[¶9] Here, for two reasons, the court did not err in issuing the order clarifying the judgment. First, because Dexter agreed that the court should issue an order clarifying the meaning of "retirement earnings," he has waived his contrary argument that it was improper for the court to issue an order of clarification. *See Foster v. Oral Surgery Assocs., P.A.*, 2008 ME 21, ¶ 22, 940 A.2d 1102.

[¶10] Second, a de novo examination of the phrase "retirement earnings" reveals that it is ambiguous. That language can reasonably be construed to mean all income that Dexter receives during retirement, regardless of its source or the reason why he is entitled to receive it. Alternatively, it could mean a smaller universe of benefits, such as benefits that Dexter receives because of his past employment. Even that more narrow view of "retirement earnings" is ambiguous because, in addition to retirement benefits paid through Dexter's former employers, it may or may not include governmental benefits such as Social Security, which are also based on Dexter's employment history. We therefore conclude that the language in the judgment is ambiguous as a matter of law and that the court did not err by clarifying that language.

[¶11] The court's construction of the term "retirement earnings" to mean "all money paid to or received by" Dexter following his retirement, including SSD and rental income, was also not erroneous.

[¶12] The court's order did not set out its analysis or findings of fact, but because neither party moved for the issuance of findings or conclusions, we assume that the court made the findings and conclusions necessary to support its decision. *See Ezell v. Lawless*, 2008 ME 139, ¶ 23, 955 A.2d 202. The spousal support ordered in the judgment was clearly intended to be general support, because its evident purpose was "to provide financial assistance to a spouse with

substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce." 19-A M.R.S. § 951-A(2)(A) (2014); *see also Miele v. Miele*, 2003 ME 113, ¶ 10, 832 A.2d 760 (holding that the purpose of general spousal support is "to provide maintenance and support for the future needs of the payee spouse" (quotation marks omitted)). Indeed, in its order denying the motion to modify, the court confirmed that the purpose of spousal support in this case was to allow Patricia "to maintain a reasonable standard of living which would be comparable to the reasonable standard of living [Dexter] should be able to arrange to maintain." Particularly given the long duration of their marriage, the court's broad construction of the term "retirement earnings" is consistent with its original objective, reflected in the judgment, of providing Patricia with a meaningful amount of ongoing support for the rest of her life unless and until she were to remarry.

[¶13]  If the definition of "retirement earnings" were as limited as Dexter contends, it would exclude significant sources of income that he would become eligible to receive, and the amount of support that Patricia would receive as a percentage of Dexter's total income would be materially reduced following his retirement.  Any such exclusion would artificially deprive Patricia of the material support necessary to maintain a reasonable standard of living, and it would disproportionately and unfairly work to Dexter's financial benefit by protecting

certain sources of income from the support calculation. *See Sorey v. Sorey*, 1998 ME 217, ¶ 13, 718 A.2d 568 (holding that it is proper for the court to consider "justice or fairness" in determining the amount of spousal support). For that reason, the court was entitled to conclude that the judgment should not be construed to exclude from the support calculation several potentially important sources of income and benefits that Dexter might receive after he retired. The court's conclusion is therefore consistent with and supported by the provisions of the divorce judgment.

[¶14] Additionally, although the question presented here involves spousal support, some guidance may be drawn from an analogous statute governing child support, which defines "earnings" in part as

> compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise, and specifically includes periodic payments pursuant to pension or retirement programs, or insurance policies of any type, . . . and unemployment compensation benefits and workers' compensation benefits.

19-A M.R.S. § 2101(6) (2014). This statutory definition includes all of the types of income that the court included in the definition of "retirement earnings."

[¶15] Contrary to Dexter's argument, the court did not err by failing to separately consider the parties' own intentions about the meaning of "retirement earnings." During the conference where the parties addressed the issue of

clarification, Dexter did not request an opportunity to present evidence on that issue. Further, any such request would have been futile because in construing a judgment, even one that is predicated on the parties' written settlement agreement, the dispositive inquiry is the court's intention and not that of the parties. *See Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me. 1983). Here, particularly because the same judge issued and then clarified the original judgment, the court properly examined the judgment on its own terms without considering the parties' intent. *See Thompson*, 2002 ME 39, ¶ 8, 791 A.2d 921.

[¶16]   Dexter also argues that the court's construction of the phrase "retirement earnings" constitutes a material alteration of the original support order and is therefore erroneous. The court's clarification, however, was not a change to the spousal support provision of the judgment; it merely clarified the meaning of that provision to make it more precise. Consequently, it did not exceed the scope of the court's authority. *Cf. Corcoran v. Marie*, 2011 ME 14, ¶ 17, 12 A.3d 71.

[¶17]   Therefore, the court did not err when it clarified the spousal support provisions of its own judgment, because the clarification was consistent with the judgment as a whole and supported by the record.

B.     Denial of Motion to Modify

[¶18]   Dexter next argues that the court erred in denying his motion to modify. We review the denial of a motion to modify spousal support for an abuse

of discretion and consider "(1) whether factual findings, if any, are supported by the record pursuant to the clear error standard; (2) whether the court understood the law applicable to its exercise of discretion; and (3) given the facts and applying the law, whether the court weighed the applicable facts and made choices within the bounds of reasonableness." *McAllister v. McAllister*, 2011 ME 69, ¶ 11, 21 A.3d 1010 (quotation marks omitted); *see also Day v. Day*, 1998 ME 194, ¶ 5, 717 A.2d 914 ("Absent a violation of some positive rule of law, we will overturn the trial court's decision of whether to modify spousal support only if it results in a plain and unmistakable injustice . . . ."). A party who seeks a modification of spousal support must prove that the modification is justified based on a showing of "a substantial change in either the payor or payee spouse's financial condition." *Charette v. Charette*, 2013 ME 4, ¶ 7, 60 A.3d 1264 (quotation marks omitted). The "baseline" against which those changes are measured "includes whatever future circumstances were both foreseen and probably provided for in the amount of alimony already set." *Klopp v. Klopp*, 598 A.2d 462, 464 (Me. 1991). The court's decision to deny Dexter's motion was fully consistent with these principles for several reasons.

[¶19] First, the court found that any economic changes caused by Dexter's retirement were anticipated at the time of the divorce because, pursuant to the parties' agreement, the amount of Dexter's post-retirement support payments to

Patricia was expressly tied to the amount of money he would receive after he retired. Further, the amount of the post-retirement support payments was not an absolute dollar figure but rather a percentage of his retirement earnings, which would automatically accommodate changes in his financial circumstances. Therefore, the terms of the judgment already anticipated the change on which Dexter based his motion. *Cf. McAllister*, 2011 ME 69, ¶¶ 14-15, 21 A.3d 1010 (finding a substantial change in circumstances where there was an unanticipated drop in the value of marital property).

[¶20] Second, the court did not commit clear error in finding that Dexter can afford to pay the current amount of spousal support. The court was presented with evidence that, except for the amount of his spousal support obligation, Dexter's expenditures did not change after he retired. Further, he purchased a new vehicle several months prior to the hearing; he budgets $200 per month for recreation and vacation expenses; and in 2013 he paid for vacations to Las Vegas and South Carolina. The court also noted that Dexter's current wife receives annual retirement benefits of $20,000.[5] Therefore, although Dexter's annual income and benefits dropped from $64,000 at the time of the divorce to approximately $51,000 at the time of the motion hearing, the court did not commit

---

[5] Dexter argued that his current wife's income was not relevant (although he nonetheless was willing to argue that his support obligation should be reduced because of expenses attributable to her). However, the court properly considered his current wife's financial circumstances as they bear on his own ability to pay support to Patricia. *See Sorey v. Sorey*, 1998 ME 217, ¶ 12, 718 A.2d 568.

clear error in finding that Dexter could maintain a reasonable standard of living while still paying the amount of spousal support required by the judgment.

[¶21] Finally, the court did not err when it concluded that Patricia's need for spousal support had not diminished. Patricia's financial statement, *see* M.R. Civ. P. 108(c), revealed that, without spousal support, her annual income would be less than $9,000. Even while receiving spousal support from Dexter, she qualified for subsidized housing.

[¶22] The court considered Dexter's allegation that although Patricia had not remarried after the divorce, she became involved in a relationship that was the functional equivalent of marriage,[6] warranting a termination of spousal support pursuant to 19-A M.R.S. § 951-A(12) (2014).[7] The court found that although Patricia shared a residence and housing expenses with a friend for a period of time after the divorce, she entered into that arrangement so that she could "get by" financially, and the relationship was not the functional equivalent of marriage.

---

[6] Dexter's written motion to modify was based only on an allegation that his financial circumstances had changed after the divorce. After 19-A M.R.S. § 951-A(12) (2014) went into effect, *see* P.L. 2013, ch. 327, § 2 (effective October 9, 2013), he argued that his spousal support obligation also should be terminated or reduced because, after their marriage, Patricia had lived with another person.

[7] Title 19-A M.R.S. § 951-A(12) provides:

> When it appears that justice requires, an order awarding spousal support is subject to modification to terminate spousal support when it can be shown that the payee and another person have entered into a mutually supportive relationship that is the functional equivalent of marriage that has existed for at least 12 months of a period of 18 consecutive months.

These findings are not clearly erroneous, and the court did not err when it concluded that section 951-A(12) did not provide a basis for a modification of spousal support.

[¶23]  The court's decision to deny Dexter's motion to modify, based on its findings regarding the overall financial circumstances of Dexter and Patricia, was not an abuse of discretion or a "plain and unmistakable injustice."  *See Day*, 1998 ME 194, ¶ 5, 717 A.2d 914.  We therefore affirm.

The entry shall be:

> Judgment affirmed.

---

**On the briefs:**

Kirk D. Bloomer, Esq., Bangor, for appellant Dexter R. Voter

Benjamin K. Cabot, Esq., C.W. & H.M. Hayes, Dover-Foxcroft, for appellee Patricia Mae Voter

Dover-Foxcroft District Court docket number FM-2006-86
FOR CLERK REFERENCE ONLY